Good morning. The next case on the calendar is Arturo Simon v. Commissioner of Social Security Administration. We have present today Sarah Boer and Richard Winters. Ms. Boer, are you ready to proceed? Yes, Your Honor. Would you like to save three minutes for rebuttal? Yes. Yes, Your Honor. Perfect. Thank you very much. You may proceed. Thank you. Mr. Simon, who only had a high school education, had a very successful work history in sales, a skilled work history. He was a district manager and finally he was a sales regional manager and was a high earner. He filed for benefits at age 60 after resigning his position due to mental and at the time she rendered an opinion regarding his functional limitations. She had treated him for over four years. It's undisputed that had the ALJ credited Dr. Turner's opinion, the vocational witness testified that there was no work that Mr. Simon could perform. But the ALJ rejected and accorded little weight to Dr. Turner's opinion as well as all of the examination by Dr. Marban, a psychologist. He accorded little weight to that opinion as well as the opinions of the non-examining state agency psychologists. We contend that the ALJ failed to set forth good cause in rejecting Dr. Turner's opinion according at little weight. The ALJ claimed it was inconsistent with the longitudinal history. However, Dr. Turner's notes well support her opinion. For example, in October of 2014, the first year after he filed for benefits, she wrote that he wasn't able to process information, complete his activities of daily living without help. His illness is chronic and severe and he is no longer able to mentally function. He lives in a complete state of depression, was racing thoughts and fears people, was somewhat paranoid at times and has frequent panic attacks. He is a severe case, unable to handle any type of stress. A year later in August of 2015, her notes show that he was sad and depressed. He had slurred speech. He had slow motor skills capability, was isolated in his own world, had high anxiety, shaking, unable to process information without help, unable to focus and the following year, she noted that he was stable on medications, but he still gets sad and anxious. A month later, he was depressed, severely anxious, shaking a lot, unable to focus, concentrate, maintain his train of thought. He was not doing well at all with anxiety, unable to focus. At the last appointment prior to completing the medical source statement, she commented he was irritable, depressed, very moody, paranoid, unable to maintain his train of thought, was quick to anger. The ALJ relied on Dr. Marban, the consultative psychologist, in part to discredit Dr. Turner's opinion. And it was curious that the ALJ didn't explain how Dr. Marban's opinion was inconsistent with the doctor's own clinical findings and other clinical findings, yet reliable enough to use to discredit the treating psychologist's opinion. But Dr. Marban's report also documented many of the same findings of Dr. Turner. For example, excessive worry and sadness, passive suicidal thoughts, panic attacks, poor sleep, poor appetite, mood swings, racing thoughts, irritable, difficulty concentrating, low energy, feelings of hopelessness, helplessness and worthlessness, recurrent episodes of rage, uncontrollable aggressive impulses, fearfulness and anxiety. And even Dr. Marban noted there are days he does not bathe due to a lack of motivation. He does not perform household chores. Dr. Marban also documented Mr. Simons had a recent suicide attempt by hanging. He tried to hang himself in his garage, but his wife found him. So Dr. Marban's opinion is not inconsistent with Dr. Turner's report. She noted multiple abnormalities and said he had to be redirected often during the interview. He had a sad and anxious mood. He had an impaired memory. He had a difficulty with computations, with concentration and attention. So Dr. Marban's opinion is not inconsistent with Dr. Turner's opinion. Dr. Marban also opined that Mr. Simon is experiencing symptoms of depression and in a work setting he would likely experience difficulties with concentration and tax persistence. He may not accept instruction. May I ask you a question? If we were to agree that the determination that the ALJ erred in affording Dr. Turner's opinion only little weight requiring a reassessment of the weight, would it require reassessment of the weight afforded Dr. Marban or is that something that should be remanded? Well, we're asking that the court send the case back for further evaluation. I mean, the court can always pay the case if you think the record is sufficient because of the vocational testimony that confirmed that if had the ALJ accepted Dr. Turner's opinion, there's no work that could be performed. But the ALJ also erred in discrediting Dr. Marban's opinion, which was consistent, as I've stated, with Dr. Turner's opinion. In this case, you have two choices. You can remand for a word of benefits that is permitted. You also can remand for further proceedings. Thank you. This is Judge Anderson with a question. I see that you cite the unpublished Castro opinion from this court. Do you have any published opinion from this court that supports the kind of rationale set forth in Castro? And if not, what about other circuits, published opinions? Well, Castro cites and relies on Sharfaz, which is an old case of this court from 1987. In Castro, the court noted that I have read Sharfaz, and that seems to me to give support probably only to the fact that it was perhaps inappropriate for the ALJ to discount Dr. Turner. But when he said from time to time, really in several, that he was stable with his so there is some support in Starfaz for that proposition, but nothing else that I saw. Am I wrong? Well, it also addresses the issue of when a person has differing stability over time, because the Castro case discussed the Seventh Circuit case, published case in Scott, and talked about the fact that a person may have improved after receiving psychological treatment may not necessarily contradict an opinion that the patient continue to face limitations, because there can be a great distance between a patient who responds to treatment and one who's able to enter the workforce. And that case was discussed in the Castro opinion. The court also cited a Ninth anxiety and depression to make some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace. So those those decisions were cited in the unpublished case of Castro, which, which I believe is very, very consistent with the facts of this case, and finding that the ALJ aired and discrediting the treating physician, psychiatrist opinion in that case, so that we have any cases supporting the proposition that the work environment with its stress is so different from the home environment, and or the environment in the doctor's office, that observations in the home and and in the doctor's office are should be taken with a grain of salt. Do we have cases saying that published cases? There aren't very many 11th Circuit recent published cases dealing with social security issues. Nothing like that, specifically that I can recall, there are lots of district court cases. And there are certainly cases in other circuits that address the difference between working in an office and being doing well in an office and doing well in in a work setting. But I would point out that actually, Dr. Turner never said he was stable, just say stable on medication, but never said that he had improved at all. And there's there is authority that just somebody improves occasionally, that that doesn't mean they can sustain work activities, and doesn't mean they're able to work on a sustained basis, you have to be able to work on us on a sustained basis. So let me this is Judge Marcus, let me slightly switch the focus. As I understand your position. You say the ALJ aired in multiple ways. First, because he didn't accord the proper deference to Dr. Turner, the treating psychiatrist's opinion. Second, he didn't accord the proper weight to Marbon's opinion, the one shot psychologist who came in at the request of the commissioner. And you say a third thing, which I want to have you address in a moment or two, if you would, you say that it was error for the ALJ to reject Simon's subjective limitations as being unsupported by substantial evidence. Do you want to explain that one? That's the third thing you cite as error, if I have it right? Well, the decision was very general, and the ALJ did not provide specific reasons for discrediting the the subjective complaints of Mr. Simon, he, there was some boilerplate language, but didn't get into any of the regulatory factors or the other reasons for discrediting the opinion. Now, the district court sort of went through the record and found some things like the fact that he could drive occasionally and, and that he could, he could dress, but even he didn't dress himself consistently as the other providers, even the consultative doctor noted times, as I mentioned, he didn't dress consistently. And he didn't often engage in day to day activities. There were times when he wouldn't come down even to see family inside his own home. They're documented in Dr. Turner's notes. So the fact is that the ALJ is required to provide some specificity for rejecting testimony that's provided by a claimant at the hearing. It cannot just be some generic, it's inconsistent. Well, what is it inconsistent with? And we contend the ALJ didn't provide any specificity. And that would be a separate basis to remand to provide some specificity. The 11th Circuit case law does not allow implicit, implicit discrediting of subjective symptoms. So just so that I'm clear, and this goes back to a question Judge Lidoa asked you a little bit earlier, you would have us vacate and remand and have the commissioner reconsider the petition. And in the process of doing that, afford appropriate weight to Drs. Turner and Marban and provide some explanation for why, in a detailed way, the ALJ had rejected Simon's subjective testimony. Is that the sum and substance of it? Yes, that would be that would be we would be very happy with that result. And you're not asking us to reach our own conclusion about the matter based on the the corpus of evidence presented. The court has that ability, it doesn't understand that. But that's why I'm that's why I'm asking the question. You're seeking a read a vacate and remand, as opposed to a reversal. We are seeking both. It's an alternative relief. Because I have one cases at the circuit level where not in this circuit, but in another circuit where the where the case was clear, the client met a listing and the court found they had met the listing and no point in sending it back. And you have that ability because of the vocational testimony, but certainly a remand is fine as well. Doesn't that make more sense here, given what the ALJ said, that is to say, doesn't a remand make more sense to give them an opportunity? Yes, that was holding the appropriate weight to A, B and C, then to make a determination. Yes, that that would be that would be acceptable to Mr. Simon. Thank you. Thank you very much. Thank you, Miss Ford. We will have additional time remaining for rebuttal. Mr. Winters, would you like to proceed? Yes. Thank you. Thank you. May it please the court Richard Winters for the Commissioner of Social Security. Claimant suggests that something is amiss when an ALJ who's not a psychologist or a psychologist, a psychiatrist or psychologist assesses the claimant's ability to perform work related mental functions. Mr. Winters, let me ask you a question because this goes to Dr. Turner's opinion. So with with physical impairments, it may be easier for a physician to assess in a clinical setting how limitations could affect a claimant in the you know, they raise a potentially different host of issues. So how can a physician observe a claimant in a clinical setting? How could that provide any insight into how the claimant's limitations regarding mental impairments would affect him in the workplace? I mean, can a can an administrative law judge sufficiently make that determination in a assessing whether it's a physical RFC or mental RFC rests solely with the ALJ? Yes, an ALJ will consider medical evidence and a doctor's opinion about RFC, but the regulations clearly state that it's an issue reserved to the Commissioner. But isn't it possible for a claimant with mental impairments to have good days and let's say, for example, make improvements but still not be able to work in a in a setting in a workplace setting? I mean, you could have a good day or you could have a fluctuation in your symptoms, but that doesn't necessarily mean that you're capable of being able to work. That's true, but it's also true in the case of physical impairments as well. Sometimes people have good days with respect to various physical impairments. I'm kind of curious because one of the things that the ALJ talked about was his ability, Mr. Simon's ability to drive. But at the same time, there was also testimony that he had severe road rage, which points at his inability to maintain proper social interactions. Those were his, that was his testimony, but he also was able to attend to all of his daily activities without assistance. He was able to go out and socialize with friends occasionally for shopping. The problem with Dr. Turner's opinion is that it's so extreme. She assessed claimant as having extreme limitation in all four functional domains and with respect to work-related limitations. She assessed him with market limitations, which is the highest or most Yes, she was, Your Honor. And shouldn't the treating physician have been given greater weight? Well, unless good cause existed. I mean, what was the good cause that existed for not giving Dr. Turner greater weight? Good cause is the findings of both the consultative physical examiner, Dr. Moravi, and Dr. Marvin, psychological consultative examiner. For example, Dr. Marvin said that claimant's behavior was cooperative. His speech was coherent. He had congruent effect, goal-oriented thought process, no signs of psychosis. He was alert and oriented. How does any of that undermine the opinion by the treating psychiatrist, Rosa Turner? The reason I raise it is just to give you a sense of what troubles me about the case. There is one doctor who's been with this patient for four years, from May of 13 to July of 17. That's four years and two months. We know from this record that the treating psychiatrist saw her patient on at least 32 successive occasions. And we know that she had prescribed at least four psychotropic medicines to treat the bipolar disorder. And we know that in each and every instance, the treating physician's diagnosis remains unchanged. And throughout the entire period, there are multiple entries by the same treating physician that he is unable to work. April 14, he's unable to work. January 15, he's unable to work at all in any capacity. March of 15, unable to work in any capacity. July of 17, unable to work and he will not get better. He will only get worse. When I looked at the entries in the notes made by Turner, I couldn't see anything that undercut any of those opinions or the diagnoses. That's where I'm having, I guess, a disconnect to the extent the ALJ relied upon Turner's notes to undermine and reject Turner's opinions. That's the disconnect. Maybe you can help me with what there is in the notes of Dr. Turner that would suggest it's in conflict with the repeated consistent opinion about A, the diagnosis, B, the treatment, and C, the prognosis about the ability to work. Well, I think it's significant, Your Honor, that in the more than four years that Dr. Turner treated claimants, she only adjusted his medication five times, which suggests that the medication regimen was working well. In fact, in May of 2014, Dr. Turner said so. Also, it's significant that in over four years, Dr. Turner only administered a mental status examination once. That was in May 2013 at the initial evaluation. If you look at Dr. Turner's notes, almost all of them are basically claimant self-reports. Subjective complaints cannot be a basis for medical opinion. Dr. Turner could have administered another mental status examination on a regular basis, but she didn't. There's a disconnect between, yes, the claimant had serious symptoms, yes, he has depression and anxiety, and yes, the ALJ accounted for that by limiting him to unskilled work with mental limitations. There's a disconnect between the notes and the severity, the extremity, extreme limitations that Dr. Turner assessed. My problem with what you just gave as reasons to discount Dr. Turner are not the reasons given by the ALJ. At page eight of the ALJ opinion, where he is discounting and giving his reasons for Dr. Turner, he doesn't say anything about never changing the medications, for example. He talks about these general observations of the other two doctors, Dr. Merity and Dr. Marban, general observations in the doctor's office, like good judgment or a good fund of information, precisely the kind of observations in the doctor's office that our Castro decision, albeit unpublished and not binding, says that no reasonable jury could discount the doctor's opinion on the basis of such general judgments in the doctor's office as opposed to the stress of a workplace. Well, I think Castro could be distinguished because in this case, the ALJ didn't just rely on the objective findings of Dr. Marban, but he also pointed to claimant's functionings outside of the treatment room. The other activities which included being able to go out and shop, take care of all his personal needs without assistance. And the ALJ also noted, he says the plaintiff can dress and feed himself. That seems to me to be completely irrelevant with respect to whether he can operate in the stress of a workplace. I mean, what does that have to do with the plaintiff's function? I mean, there's one comment about Castro. The ALJ also noticed that at the hearing, which is a stressful situation for most claimants, claimant interacted very appropriately and meaningfully with his attorney, with the VE and the ALJ. And reading the transcript, you can see that. And the ALJ credited plaintiff's subjective complaints to the extent that they were and took into account concentration issues by limiting him to simple, short tasks. And he accounted and simple work-related decisions. And he accounted for claimant's issues with appropriately working with supervisors by only occasionally, he could only occasionally interact with coworkers, supervisors, and the general public. And the work that the ALJ found the claimant could do is unskilled. Can I ask you the question in a slightly different way, counsel? What is there in Marban's testimony? And Marban sees the petitioner only one time. But what is there in the opinion offered by Marban that's inconsistent with the entire series of opinions rendered by Dr. Turner? I ask it because Marban says, based on her examination, that Simon should be diagnosed with persistent depressive disorder, generalized anxiety disorder, panic disorder, and intermittent explosive disorder. Then Marban went on to say that he had poor recent memory, fair immediate memory, good remote memory. He demonstrated good calculation abilities. And then when it came to the opinion on the critical question about being able to work, Marban opines that in a work setting, he, quote, would likely experience difficulties with concentration, with task persistence, and he may not accept instructions or respond appropriately to criticism from supervisors. I think that's a fair recitation of what Marban said in the aggregate. What is there about what Marban said, whether we look at the diagnosis or the prognosis that was inconsistent or at war with anything that the treating physician Turner had said? Well, your honor, with respect to diagnoses, this court has held in the war case to believe that diagnoses are not limitations. They cannot be translated. I understand that, but I'm simply asking, was there anything that Marban said, whether by diagnosis or prognosis? By prognosis, I mean the ability to perform in the work world, given the diagnostics that we had. Well, Dr. Marban said that during the course of the evaluation, claimant was able to concentrate sufficiently in order to proceed with the examination. And also, claimant was able to follow one and two step instructions that Dr. Marban gave during the evaluation. That would be inconsistent with Dr. Turner's extreme opinion. And that's probably the- I'll just stop you if I can on that point to really zero in with a fine point. Having made all of those observations, and I read them to you that Marban made, she still reached the conclusion that he would have real and substantial difficulties in the work experience, and that those difficulties were not just possible, those difficulties were likely. And he had difficulty with concentration, with task persistence, accepting instructions, responding appropriately to his supervisors. So nothing that she observed about short, mid, and long-term memory, and his capacity to calculate, altered or affected the critical, ultimate opinion that she offered. Did I misread that? Well, I think the thing about her opinion regarding concentration and interaction is that it's quite vague. A likely doesn't mean claimant could never concentrate or persist. And what the general statement and put it into RFC appropriate terms, which would be simple routine tasks and simple work-related decisions. And with respect to the ability to work with supervisors, again, the- Dr. Marban didn't say, well, can he occasionally work with supervision? Would he occasionally have problems taking directions more frequently? Did not say. So again, the ALJ put it in RFC appropriate terms and limited him to occasional interaction with supervisors and public and coworkers. So the ALJ accounted for Dr. Marban's conclusions, but because they were vague, he had to give the opinion a little weight, and then he translated her concentration and supervision issues into RFC appropriate terms. Thank you. Thank you, Mr. Winters. Ms. Foer, you have three minutes remaining for rebuttal. Ms. Foer, you're muted. Sorry. That's okay. I want to point out the doctor regarding the issue of social functioning that Dr. Turner noted in August, 2015, September, 2015, that he was- he would just stay in his room and refuse to see family members who came to the house. And I disagree that Dr. Turner's notes are filled with subjective statements. They have findings on examination. These are kinds of things a psychiatrist has the expertise to determine, such as panic attacks, racing thoughts, fearful, isolated, paranoid, irritable, mood swings, episodes of anger. These are things that a psychiatrist is trained to determine, and her notes are filled with these statements, as noted in our brief, initial brief at pages 28 and 29. And certainly, it's our contention that the report of Dr. Sarban is consistent with Dr. Turner's notes, as was noted, and that the ALJ erred in discrediting Dr. Turner. And we would ask that you send the case back for a further review of Dr. Turner and Dr. Sarban's opinion, as well as the subjective complaints. Thank you both. We will take the matter under advisement. Thank you very much for your argument. Have a great day. Thank you, Your Honor.